APPEAL OF INTER-URBAN CONSTRUCTION CO.

Docket No. 4387.     Decided September 25, 1926.

*William D. Riter, Esq.*, and *T. Ellis Allison, Esq.*, for the petitioner.

*P. J. Rose, Esq.*, for the Commissioner.

LITTLETON: The Commissioner determined a deficiency in income and profits tax of $2,020.44 for the calendar year 1919, and by this proceeding petitioner questions the correctness of a portion of that amount, alleging as its reason, first, that it should have been allowed a deduction of $18,308.27 instead of $16,168.90 on account of bond discount, and secondly, that it should have been permitted to deduct $13,000 as compensation paid to its general manager.

### FINDINGS OF FACT.

The petitioner and the Salt Lake-Utah Railroad Co. were, during 1919, affiliated corporations. They were both organized under the laws of Maine and during the taxable year had their principal offices at Salt Lake City, Utah. The petitioner was engaged in general construction work and the railroad company was organized for the purpose of building and operating an electric railroad extending from Salt Lake City to Pason, Utah, a distance of approximately 75 miles. The railroad company and the construction company entered into a contract about 1912, whereby the latter was to construct a railroad and deliver it to the former. This work was completed about 1916, at which time the railroad company concluded to construct a branch line approximately 15 miles in length and the contract for this work was given to the construction company. The branch line was completed in 1917.

During the year 1919, the outstanding common stock of the railroad company amounted to $3,000,000 and the outstanding preferred stock amounted to $1,980,000 par value. The petitioner owned nine-tenths of the common stock and all of the preferred stock.

W. C. Orem was in 1912, and since that time has been, general manager of the construction company and president and general manager of the railroad company. At the time the contract for the construction of the railroad was entered into in 1912, it was contemplated that the work would be completed within two years, and the directors of the construction company adopted a resolution on October 8, 1912, providing that " said Orem's compensation in full for his services shall be $50,000.00 payable at the rate of $25,000 each year, in such installments as may be specified in the contract."

On November 7, 1914, the directors of the construction company adopted a resolution which read " On motion of Mr. Murphy, and

seconded by Mr. Fisher, W. C. Orem was continued as manager of the company at his old salary, his services to be discontinued at the pleasure of the Board."

On October 6, 1915, the directors adopted another resolution reading as follows:

The Secretary reported that the General Manager, W. C. Orem, had suggested that inasmuch as his third year as general manager of the Interurban Construction Company would be up in a few days and he had the company's needs largely financed for the present, that his salary for general manager be discontinued at the close of the year for the present, leaving future salary to be accrued upon such basis as was deemed fair when the time should come.

On motion of F. S. Murphy, seconded by Frank Fisher, it was unanimously voted to discontinue the salary of the general manager at his own suggestion and have the minutes show that the Board considered the suggestion of the general manager a very generous one, especially in view of the fact that he would still be required to give a great deal of time and energy to the company's affairs.

On January 20, 1916, the directors of the construction company considered the matter of salary of its general manager and adopted the following resolution relative thereto:

At this point W. C. Orem retired from the meeting in order that the Board of Directors and other interested parties present might consider the question as to whether his services during the present year as general manager of the Construction Company, were needed, and if they decided in the affirmative, to fix his salary. After full discussion, it was unanimously decided by those present that the company did need his services and that his salary should be fixed at $1,000 per month, having in mind that during the year, they probably wanted to build a line to Magna but not do any other new construction of any magnitude, also having in view that during the year a number of questions and deals involving policy and interests of the company would have to be handled.

In case it was decided to do any considerable amount of new construction, thus increasing the duties and responsibilities of our general manager in excess of what was contemplated, his salary should be fixed accordingly.

Under authority of this resolution, and with the knowledge and consent of the directors of the construction company, but without any further formal resolution, Orem was regularly paid a salary of $1,000 a month, throughout and subsequent to the taxable year in question. In December, 1919, the company paid Orem $2,000. The petitioner kept its books on the cash receipts and disbursements basis.

Subsequent to 1917, the petitioner carried on no construction work and its only asset consisted of the stock of the railroad company. The duties performed by Orem as petitioner's general manager were in protecting and advancing its interest as owner of the stock of the railroad company, of which he was president and general manager. He was paid no compensation by the railroad company.

At the conclusion of the hearing, it was stipulated by the parties that $17,909.45 should be allowed as a deduction for 1919, as bond discount.

> *Judgment for the petitioner. Order of redetermination will be entered on 15 days' notice, under Rule 50.*